IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:24-CV-430-N |
| LONE STAR AEROSPACE, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff Honeywell International, Inc.'s ("Honeywell") Motion to Dismiss Defendant Lone Star Aerospace, Inc.'s ("Lone Star") Second Amended Counterclaim [39]. Because Lone Star has failed to plead facts to state a claim, the Court grants Honeywell's motion and dismisses the counterclaim.

### I. ORIGINS OF THE MOTION

This is a patent infringement action between two companies specializing in software systems and methods. Honeywell filed suit against Lone Star, claiming that a number of Lone Star products infringed Honeywell's patents. Lone Star in turn asserted seven counterclaims against Honeywell. The Court dismissed all the counterclaims and granted Lone Star leave to replead its antitrust counterclaim. Order, Sept. 4, 2024 [32]. Lone Star filed its second amended counterclaim repleading this counterclaim for sham litigation. Pl.'s Mot. 3. Honeywell now moves to dismiss the second amended counterclaim for failure to remediate the deficiencies the Court identified. *Id.*

MEMORANDUM OPINION & ORDER – PAGE 1

## II.  RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 669 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  "Factual allegations must be enough to raise to a right of relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III.  THE COURT GRANTS THE MOTION TO DISMISS

Because Lone Star has not pled sufficient facts to meet the Rule 12(b)(6) plausibility standard, the Court grants the motion to dismiss.

Federal patent law permits parties to give notice of their patent rights to patent infringers and protects parties from antitrust and tort liability for conduct that is based on good-faith assertions of patent rights.  35 U.S.C. § 287(a); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("[F]ederal authority makes clear that it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent.").   Under the *Noerr-Pennington* doctrine, a party's assertion of its patent rights does not support liability unless the assertion is made in bad faith and objectively baseless such that "no reasonable litigant could realistically expect success on the merits."  *Prof'l Real Est. Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993); *see Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1343–44 (Fed. Cir. 1999).   Claims brought under section 2 of the Sherman Act alleging attempted monopolization must show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power" in the relevant market.  *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456–58 (1993).  In this Court's prior Order, the Court noted that Lone Star's antitrust counterclaim failed to plead sufficient facts to meet the Rule 12(b)(6) plausibility standard.

### A.  Lone Star Fails to Plead Bad Faith or Objective Baselessness

First, the Court addressed whether Lone Star had made a plausible assertion of bad faith or objective baselessness.  Order 5.  The Court explained that Lone Star's counterclaim merely contained a conclusory allegation of bad faith and failed to plead any facts to show objective baselessness.  *Id.* at 5–6.

To show bad faith, Lone Star had pointed to a failed exploratory joint venture as factual proof of anticompetitive conduct, but it failed to demonstrate the application of those facts to the claim.  *Id.*  In the second amended counterclaim, Lone Star adds details to the description of the failed joint venture, but again fails to demonstrate how those facts demonstrated bad faith or objective baselessness.  Lone Star's second amended counterclaim discusses who was involved in discussions about the potential partnership and when meetings took place.  Def.'s Second Am. Countercl. ¶¶ 15–21 [34].  However, Lone Star again fails to allege how these meetings established bad faith.  The pleadings allege only that two companies discussed a partnership and began talks in earnest, with Lone Star sharing information with Honeywell.  *Id.* ¶¶ 9–20.  The conversations of a joint venture "petered out," and the partnership did not come to fruition.  *Id.* ¶ 21.  At most, Lone Star alleges that Honeywell's infringement allegations happened after it had received detailed information about Lone Star's Accused Products, *id.* ¶ 47,  which is insufficient to allege bad faith.  The allegation that this suit was "motivated by a subjective intent to abuse the litigation process for anticompetitive purposes," *id.*,  is both conclusory and does not demonstrate that the conversations about a potential joint venture created an assertion of bad faith.

MEMORANDUM OPINION & ORDER – PAGE 4

Likewise, Lone Star pled no facts in the second amended counterclaim that support an allegation of objective baselessness. The only portion of the amended counterclaim that alleges objective baselessness is a conclusory allegation that "Honeywell's infringement allegations of the Asserted Patents against Lone Star are objectively baseless such that no reasonable litigant could reasonably expect success on the merits [and] subjectively baseless in that Honeywell knew they were baseless." Def.'s Second Am. Counterclaim ¶ 45. As the Court pointed out in the prior Order, conclusory allegations, without facts to support them, are not accepted as true for the purpose of deciding a motion to dismiss. *Ferrer*, 484 F.3d at 780; Order 6.

### B. Lone Star Fails to Plead Facts to Support a Sherman Act Claim

Next, the Court looks at the requirements of a Sherman Act claim. As discussed in the previous Order, Lone Star must plead facts that show (1) Honeywell "engaged in predatory or anticompetitive conduct," (2) had the "specific intent to monopolize" and (3) that Honeywell has a "dangerous probability of achieving monopoly power" in the industrial software market. *Spectrum Sports*, 506 U.S. 456–58. Lone Star's Amended Counterclaim again fails to allege facts corresponding to these elements.

First, the Court has identified that predatory or exclusionary conduct requires more than a negative impact on a competitor or violation of a law or contract. *See* Order 6–7. Conduct is predatory when it is "inconsistent with competition on the merits" and has a "potential for making a significant contribution to monopoly power." *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 476 (5th Cir. 2000). In order to show predatory or exclusionary conduct, Lone Star must plead that this lawsuit created "an actual or threatened injury to

MEMORANDUM OPINION & ORDER – PAGE 5

the market as a whole, not just to a particular plaintiff." *Pisharodi v. Columbia Valley Healthcare Sys., LP*, 2015 WL 11123315, at *2 (S.D. Tex. 2015), *aff'd*, 615 F. App'x 225 (5th Cir. 2015) (unpub.); *see Marucci Sports, L.L.C. v. Nat'l Collegiate Athletics Ass'n*, 751 F.3d 368, 376 (5th Cir. 2014) ("Only injuries to the market are cognizable.").

In its second amended counterclaim, Lone Star asserts that Honeywell's "patent infringement action was motivated by a desire to impose anticompetitive injury on Lone Star by interrupting its business and removing Lone Star from the industrial software market in the United States." Second Am. Countercl. ¶ 64. It attempts to use this to establish an injury to the marketplace by saying this lawsuit will "set an example for other potential small businesses to deter them from likewise attempting to develop industrial software that might compete with Honeywell." *Id.* ¶ 66. While Lone Star alludes repeatedly to an alleged scheme or "strategy" for Honeywell to file baseless patent suits against competitors, it fails to plead any facts to show such a scheme or litigation.[1] *See id.* ¶¶ 30, 48, 54, 55, 56, 59, 67. Therefore, because Lone Star has failed to plead facts to show

---

[1] In its Response, Lone Star asks the Court to take judicial notice of a 2022 patent infringement case Honeywell brought against another company. Def.'s Resp. 5 n.1 [40]. Lone Star presumably intends for this to support the claim that "Honeywell has attempted to maintain its monopoly power by asserting knowingly baseless claims of patent infringement with the intent that those claims, by themselves, would hinder competition . . . by discouraging competitors from competing against it." Def.'s Second Am. Countercl. ¶ 30. However, the Court agrees with Honeywell that this fact fails to support such an assertion. *See* Pl.'s Reply at 2, 5. That claim involved different patents than those involved here and a market unrelated to the market defined by Lone Star in this case. *Id.* Furthermore, the implication that that case shows "knowingly baseless claims of patent infringement" is belied by the $360 million settlement and license agreement. A singular instance of Honeywell successfully asserting a different patent in a different market cannot establish a single instance, much less a pattern or scheme, of "asserting knowingly baseless claims."

MEMORANDUM OPINION & ORDER – PAGE 6

a scheme, and because the Court finds that a potential deterrent effect of a single patent litigation on a hypothetical small business does not create an injury to the market, Lone Star has not shown injury to the market, and therefore has not shown predatory or exclusionary conduct.

Next, the Court looks to the whether Lone Star has sufficiently pled that Honeywell had a specific intent to monopolize and a dangerous probability of achieving monopoly power. In its Amended Counterclaim, Lone Star adds facts bolstering its claim that Honeywell is a large and profitable company. However, the Court explained in the previous Order that Lone Star needed to "plead facts that indicate how substantial Honeywell's share of the market is." Order 7.

Rather than establishing Honeywell's position in the market, however, Lone Star uses Honeywell's annual report to shareholders to discuss Honeywell's business irrespective of the market. Def.'s Am. Countercl. ¶¶ 30–54. For example, Lone Star pleads that "Honeywell had $36 billion in annual revenues" and "grew its market share and had sales growth of over 3% in 2023." *Id.* ¶ 54. However, Lone Star fails to give any context for these figures and how this data compares to competitors in the market. Internal sales growth or revenue alone does not establish market share without any information about the market as a whole. Furthermore, Lone Star does not attempt to explain how much of this revenue is within the specified market, as Lone Star's own pleadings note that Honeywell's business benefits largely from the "vertical integration and horizontal integration" of Honeywell's software with hardware and products that would be outside of the Lone Star's defined industrial software market. *Id.* ¶¶ 38–40.

MEMORANDUM OPINION & ORDER – PAGE 7

While Lone Star claims that "Honeywell's possession of monopoly power . . . is evidenced by . . . its relative size compared to its competitors," Lone Star again fails to plead any facts to show any competitor or market size. *Id.* ¶ 49. The mere fact that Honeywell is a large or established company, and that "established companies, like Honeywell, often dominate the industrial software market," *id.* ¶ 29, does not show a specific intent or dangerous likelihood of monopoly. Furthermore, Lone Star's amended pleadings reflect that Honeywell's "products face considerable price competition." *Id.* ¶ 36. While they might be a "significant competitor" in the market, *id.*, there is nothing in the pleading that alleges Honeywell's market share or that supports Lone Star's conclusory allegations that Honeywell holds, intends to obtain, or has a dangerous probability of achieving monopoly power in the market.

The Court therefore finds that Lone Star has not pled facts to support any of the elements of a Sherman Act claim. Because Lone Star's second amended counterclaim fails to remedy the deficiencies in its pleadings, the Court grants Honeywell's motion to dismiss. Lone Star has already had an opportunity to amend this counterclaim, so the Court dismisses the counterclaim with prejudice.

**CONCLUSION**

The Court grants Honeywell's motion to dismiss and dismisses Lone Star's second amended counterclaim with prejudice.

Signed March 17, 2025.

David C. Godbey
Chief United States District Judge